582 A.2d 85

**Harold X. SMITH, Petitioner,**

**v.**

**David OWENS, Commissioner, Department of Corrections and George Petsock, Superintendent State Correctional Institution at Pittsburgh, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 7, 1990.

Decided Oct. 29, 1990.

632

Harold X. Smith, pro se.

Frederick C. Smith, Jr., Asst. Counsel, Camp Hill, for respondent.

Before McGINLEY and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Harold X. Smith, an inmate at the State Correctional Institution at Pittsburgh (SCIP), filed an action in prohibition and mandamus asking us to compel the Respondents, Department of Corrections, its Commissioner, and the Superintendent at SCIP, George Petsock, to give him employment during his incarceration, or to give him damages for lost wages.[1] All Respondents applied for summary relief on the grounds that the legal authority cited by Mr. Smith does not support the relief he requests. That application

1. By order of this Court dated August 17, 1989, the Petitioner's action in prohibition and mandamus shall be treated as a petition for review addressed to our original jurisdiction under 42 Pa.C.S. § 761.

for summary relief is now before us, and we find that it must be denied.

Mr. Smith was convicted and sentenced to serve 20 years on January 15, 1975. Smith served a portion of his sentence, was released on parole, but was recommitted on September 8, 1988, to serve out the remainder of his sentence. Mr. Smith's recommitment was based on a conviction for using illegal drugs and other parole violations. On his return to prison in 1988, Mr. Smith refused to occupy a cell with another prisoner, and consequently, he was placed in a restricted housing unit.

Since Mr. Smith's placement in a restricted housing unit on October 28, 1988, he was not permitted to work and received no compensation for periods when work was not available. He is now seeking redress for his lost wages and an order directing prison officials to put him to work. Mr. Smith's brief admits that he was only placed in the restrictive housing unit on October 28, 1988, after he refused to occupy a cell with another prisoner.

Summary relief can be granted only where there is no material fact in dispute and where the right to relief is clear. *Jannetta v. Knoll*, 129 Pa.Commonwealth Ct. 458, 566 A.2d 330 (1989). In the case before us, we find that there are material facts in dispute, and for this reason we are obliged to deny the application for summary relief.

At the center of Mr. Smith's dispute with the Department of Corrections is the Department's Administrative Directive 816, paragraph XV. That directive provides as follows:

An inmate in a restrictive housing unit is not eligible for compensation unless he is assigned to a job. The Program Review Committee with the approval of the Superintendent may approve compensation at Class 4, Step A for a maximum of five days per week for any unemployed inmate who is housed in a restrictive housing unit for nondisciplinary reasons.

*Id.* Mr. Smith argues that this directive is contrary to the Act of June 13, 1883, P.L. 112, 61 P.S. § 141, as well as the Act of April 23, 1829, P.L. 341, formerly 61 P.S. § 371, *repealed by* the Act of October 4, 1978, P.L. 909.[2]

Mr. Smith's argument is two-fold. First, he argues that the provisions of 61 P.S. § 141 are mandatory since the statute provides that the correction officers "are directed to employ" prisoners. Second, he argues that once the state decides to employ some prisoners, it must employ all prisoners, and may not discriminate among prisoners. The Administrative Directive in question, however, distinguishes between inmates housed in the restrictive housing unit who are there as a consequence of a disciplinary determination from those who find themselves there for other reasons. Therefore, before we can properly consider Mr. Smith's contentions that he is being denied employment or idle pay, we must know whether or not Mr. Smith is in the restrictive housing unit for disciplinary reasons.

Mr. Smith contends that he is housed in the restrictive housing unit for reasons of his own protection, but the Commonwealth contends that he is there as a disciplinary consequence of his refusal to share a cell with another inmate. Since some non-disciplinary RHU inmates are awarded employment or idle pay, a factual determination must be made to see whether this case is a proper case to deny these benefits if Mr. Smith's status is non-discipli-

---

2. Mr. Smith's argument that the Directive violates 61 P.S. § 371, is without merit since the statute only governs the treatment of prisoners in solitary confinement and since it was repealed in 1978. After the repeal of the statute, Mr. Smith was released on parole and was not recommitted until 1988. It was not until this recommitment, that Mr. Smith was housed in the restrictive housing unit.

Consequently, the repealed statute has no application to Mr. Smith. The ex post facto prohibition does not apply to a statute which is repealed before it ever becomes applicable to the aggrieved party. The ex post facto doctrine is only applied when a statute governs events occurring before its enactment. U.S. Const. Art. I, § 10, cl. 1; *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). In this case the repealing statute was enacted before Mr. Smith was placed in the restrictive housing unit and the statute which was repealed never governed Mr. Smith's confinement in the restrictive housing unit.

nary.[3]

Respondents' application for summary relief is hereby denied.

## ORDER

AND NOW, this 29th day of October, 1990, the Respondents' application for summary relief filed in the above-captioned matter is hereby denied, and the Respondents are hereby directed to file an answer or other responsive pleading within thirty (30) days from the date of this Order.

---

**3.** The provisions of 37 Pa.Code § 93.10, direct the Department of Corrections to classify infractions into two categories, Class 1 and Class 2. For the first category of infractions, Class 1, an inmate may be housed in a restrictive housing unit, however, for a violation of a Class 2 infraction, that punishment is not available. 37 Pa.Code § 93.10. It is unclear from the facts before us at this time whether a refusal to share a cell with another inmate is a Class 1 violation.