Franco MOSCATIELLO

v.

WHITEHALL BOROUGH and A. Merante Contracting, Inc.

Appeal of: Whitehall Borough.

Commonwealth Court of Pennsylvania.

Argued Feb. 2, 2004.

Decided April 14, 2004.

Reargument En Banc Denied June 7, 2004.

James R. Duffy, Pittsburgh, for appellant.

Sean P. Audley, Pittsburgh, for appellee.

BEFORE: McGINLEY, Judge, and COHN, Judge, and KELLEY, Senior Judge.

OPINION BY Judge COHN.

Before this Court for consideration is the appeal of Whitehall Borough (Borough) from the order of the Court of Common Pleas of Allegheny County that granted the motion for preliminary injunction of Franco Moscatiello (Taxpayer).

The relevant facts of the case are as follows. The son of Taxpayer, Antonio Moscatiello d/b/a Osiris Enterprises (Osiris), bid on and was awarded a "sewer point repairs" contract by the Borough in 1993. After Osiris had completed the work, residents complained to the Borough that the restoration work on some lawns and driveways was inadequate. The Borough requested Osiris to correct the problem. Osiris refused, claiming the property owners had failed to properly maintain their lawns. After some time, the Borough filed a complaint against Osiris. The parties subsequently entered into a settlement agreement that provided that the Borough would drop most of the claims in the complaint concerning the restoration work that was allegedly in violation of the warranty provisions of the contract and would take no further action against Osiris arising out of the 1993 contract. In return, Osiris was required to repair portions of six driveways. Following this dispute, Osiris continued to submit bids for contracts with the Borough, but it was never the lowest responsible bidder.

On August 1, 2001, Borough Council considered the question of whether Osiris was a responsible contractor. The Borough Manager presented to the Council members information pertaining to Osiris' performance on the 1993 contract. He claimed that his presentation was the result of an "investigation" concerning Osiris' responsibility. The "investigation" was later found to consist of the Borough Manager's review of Council's meeting minutes from 1994 and 1995, which concerned the residents' complaints about the restoration work. After the presentation, Council voted, without debate or discussion, to declare that Osiris was a non-responsible bidder. Antonio Moscatiello attended this Council meeting and asked to respond to the allegations; the Council's solicitor refused.

Thereafter, in January 2003, in response to an invitation to bid posted by the Borough, Osiris submitted a bid. Its bid was the lowest one, $77,170.50 less than the next highest bid, made by A. Merante Contracting, Inc. (Merante). At a meeting on March 4, 2003, the Borough Council voted, without discussion or debate about the responsibility of any of the contractors who submitted bids, to award the contract to Merante. Subsequently, Taxpayer filed a motion for preliminary injunction seeking (1) to enjoin the Borough from declaring Osiris a non-responsible bidder, (2) to enjoin the Borough from awarding the contract to Merante, and (3) to compel the Borough to award the contract to Osiris. Following hearings, the trial court granted the preliminary injunction, enjoining the Borough from declaring Osiris to be a non-responsible bidder and from awarding the contract to Merante. However, the trial judge did not grant Taxpayer all the relief he sought, because it determined that it was not within his scope to compel the Borough to award the contract to Osiris. The court based its decision to award relief on the evidence presented and made the following findings:

(a) [T]he lawsuit in 1993 was settled at about one-half the originally claimed relief;

(b) [N]o court determination or admission of liability was ever made;

(c) [T]he 1993 contract was the only contract Osiris ever had with [the Borough];

(d) Antonio Moscatiello had ... no notice of any charges against him, or that [a declaration of non-responsibility] was to be considered on August 1, 2001;

(e) [A]t the meeting on August 1, 2001 when Osiris was [declared non-responsible], its owner Antonio Moscatiello was not permitted to speak in his defense;

(f) Antonio Moscatiello was not permitted to speak about the proposed [declaration], because he had not asked to be on the agenda, or signed up to speak;
(g) [T]hose on Council had little first hand information about the 1993 issues;
(h) Council did not consult its Engineer about the responsibility of Osiris;
(i) Osiris is otherwise able to perform the contract; and
(j) The Osiris bid was $77,170.50 or 32% lower than the next bid.

(Trial Court Opinion, June 25, 2003, pp. 14–15.) *Critical to the trial court's decision was the underlying declaration of non-responsibility made by the Borough in 2001.* The Borough filed a motion for stay of injunction, which the trial court denied. This appeal followed.

■ Initially, we note that when this Court reviews an appeal from the grant or denial of a preliminary injunction, "we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Lewis v. City of Harrisburg,* 158 Pa.Cmwlth. 318, 631 A.2d 807, 810 (1993) (quoting *Roberts v. Board of Directors of the School District of the City of Scranton,* 462 Pa. 464, 469, 341 A.2d 475, 478 (1975)). A reviewing court only interferes with the decision of the trial court when no evidence exists to support the trial court's decision or the rule of law relied upon was palpably erroneous or misapplied. *Lewis,* 631 A.2d at 811.

On appeal, the Borough raises four primary issues: (1) whether the trial court erred, when writing its initial opinion, by failing to specifically apply the five-pronged test applicable to review a motion for preliminary injunction; (2) whether the trial court ignored the right of the Borough to exercise its discretion in determining the responsibility of a bidder; (3)

whether there was substantial or sufficient evidence to support the facts as found by the trial court; and (4) whether the trial court failed to afford proper deference to the opinions of fellow common pleas judges. We will discuss each issue *seriatim.*

■ The Borough first argues that the trial court erred in failing to recite and specifically apply the five-pronged test applicable to reviewing a motion for preliminary injunction. It is well-settled that a trial court may grant a motion for preliminary injunction only where the moving party demonstrates:

(1) that relief is necessary to prevent immediate and irreparable harm which cannot be compensated for in damages;

(2) that greater injury will occur from refusing the injunction than from granting it;

(3) that the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful conduct;

(4) that the alleged wrong is manifest, and the injunction is reasonably suited to abate it, and

(5) that the plaintiff's right to relief is clear.

*Lewis,* 631 A.2d at 810. The moving party must show that he or she has a reasonable likelihood of success on the merits and, thus, it is proper for a reviewing court to consider the testimony going to the merits at the time of a hearing on the motion for preliminary injunction. *Id.*

Regarding this argument, that the trial court failed to address the five-pronged test set forth in *Lewis* in its opinion of June 25, 2003, discussing its grant of the preliminary injunction, we note that when the Borough filed its motion for stay of injunction, it raised this same issue. In its

opinion denying the motion for stay of injunction, the trial court announced that, while it had not specifically set forth the five-pronged test in its June 25, 2003 opinion, it had stated its reasons in that opinion as to why the preliminary injunction was proper and then restated those same reasons in the opinion denying the stay, issued July 9, 2003. In that latter opinion, it specifically applied the five-pronged test enunciated in *Lewis*. Specifically, the court determined that the declaration that Osiris was a non-responsible bidder was a direct and immediate harm because the expenditure of an extra $77,170.50 could not be recouped from the next highest bidder or from a surcharge action against Borough Council members and, therefore, that the dispute could only be remedied by an injunction. Further, it reiterated that its previous order had restored the status quo, that the action by the Borough in declaring Osiris a non-responsible bidder was manifestly wrong, and that Taxpayer's right to save Borough funds is clear. Thus, even were we to assume that the initial opinion was inadequate the court clearly cured any defect in its latter opinion. Therefore, the Borough is not entitled to relief on the basis that the trial court failed to adequately address the five-pronged test set forth in *Lewis*.

■ Turning to the second argument, whether the trial court erred in allegedly ignoring the right of the Borough to exercise its discretion in determining the responsibility of a bidder, we must examine, as the trial court did, the declaration by the Borough that Osiris was a non-responsible bidder. We first note that Section 1402(a) of The Borough Code, Act of February 1, 1966 P.L. (1966) 1656, 53 P.S. § 46402(a), states that "all contract or purchases ... shall not be made except with and from the lowest responsible bidder...." We have stated:

[T]he courts have uniformly held that the question of who is the lowest responsible bidder is one for the sound discretion of the proper municipal authority, and does not necessarily mean the one whose bid on its face is lowest in dollars, but *includes financial responsibility, also integrity, efficiency, industry, experience, promptness, and ability to successfully carry out the particular undertaking* .... At the same time, it is held that to award the contract to a higher bidder capriciously without a full and careful investigation is an abuse of discretion which equity will restrain.... Where a *full investigation* discloses a *substantial reason* which appeals to the *sound discretion* of the municipal authorities they may award a contract to one not in dollars the lowest bidder. The *sound discretion,* which is upheld, *must be based upon a knowledge of the real situation gained by a careful investigation.*

*Kierski v. Township of Robinson,* 810 A.2d 196, 199 (Pa.Cmwlth.2002) (quoting *Berryhill v. Dugan,* 89 Pa.Cmwlth. 46, 491 A.2d 950, 952 (1985)) (emphasis in *Berryhill* ).

In *Kierski,* the township declared a garbage hauler to be a non-responsible bidder because he failed to collect garbage on a regular basis, as required by the contract, and because the garbage trucks caused severe damage to the township roads and leaked hydraulic fluid, which the township had to clean off the roads. Additionally, the township fielded complaints from residents on a weekly basis during the time the garbage hauler had the contract with it. Thus, the township declared the garbage hauler to be a non-responsible bidder, but it did so without any formal investigation into the hauler's responsibility. The Court held that because the township officials had personal experience with the bidder and actual knowledge of the real

situation, an investigation in the bidder's responsibility was not necessary because it would not have provided the township with any better knowledge of the garbage hauler's ability to perform under the contract than its personal experience during the performance of the previous contract. However, we also stated that "[c]ertainly where a municipality has no personal experience with the ability of the lowest bidder to perform under a particular contract, the municipality must conduct a full and complete investigation before awarding the contract to a higher bidder." *Id.* at 199.

Applying the above standard to the case *sub judice*, we are compelled to conclude that the trial court properly granted the preliminary injunction. First, the Borough relies on *Kierski* for the proposition that its personal experiences with Osiris formed the basis of its decision to declare it a non-responsible bidder and, therefore, no investigation was warranted. However, the record reveals that the Council members who declared Osiris to be non-responsible were not on the Council at the time of the performance of the contract or during the dispute about the restoration work. Second, the record indicates that while an "investigation" was performed by the Borough Manager, it consisted solely of a review of Council's minutes from 1994 and 1995, when the dispute over the restoration work ensued. There is no evidence that an investigation was ever conducted to determine the financial responsibility, integrity, efficiency, industry, experience, promptness, or ability of Osiris to successfully carry out the terms of the new contract as is required by Section 1402 of The Borough Code. The sole reason stated on the record for the declaration appears to be that Antonio Moscatiello's "people skills were nil." There is not one shred of evidence presented that he was financially irresponsible, or that he failed to meet the terms of the 1993 contract. In fact, there is no evidence to suggest that the Borough was, in any way, displeased with Osiris' completion of the 1993 contract until it received complaints from residents nearly a year later. Yet, the Borough has attempted to refrain **permanently** from awarding bids to Osiris merely because he exercised his right to dispute the residents' allegations. In summary, Osiris completed the project according to the terms of the contract and was paid in full. That Osiris disputed the factual basis for the residents' later complaints is not a basis for declaring it a non-responsible bidder. Thus, we conclude that the trial court did not err or ignore the right of the Borough to exercise its discretion in determining the responsibility of a bidder.

■ The third issue the Borough argues is that the trial court's facts are not supported by substantial or sufficient evidence. Specifically, the Borough argues that the trial court accepted the testimony of Taxpayer's witnesses over the testimony of the Borough's witnesses.

■ The trial court sitting in equity is the ultimate finder of fact and, especially, where credibility is concerned its findings are entitled to great weight. *Fraternal Order of Police Lodge No. 5 v. City of Philadelphia*, 139 Pa.Cmwlth. 256, 590 A.2d 384 (1991), *petition for allowance of appeal denied*, 529 Pa. 670, 605 A.2d 335 (1992), *petition for allowance of appeal granted*, 530 Pa. 634, 606 A.2d 904 (1992), *appeal dismissed*, 534 Pa. 301, 632 A.2d 873 (1993).

In the case *sub judice*, as we have already observed, the findings indicate that the investigation by the Borough Manager was perfunctory in that he only reviewed the minutes from Council meetings in 1994 and 1995. He never inquired as to Osiris' responsibility at the time. No evidence was presented to show that there were

cost overruns, delays, or any type of monetary loss that would indicate that Osiris was not a responsible contractor. Thus, the record amply supports the trial court's determinations that a sufficient investigation was not performed and that the Borough wrongfully declared Osiris a non-responsible bidder. While there may have been some evidence to the contrary, it was within the purview of the trial court to reconcile conflicting evidence. Consequently, we determine that there is substantial evidence in the record to support the facts as found by the trial court.

The Borough also argues that the trial court did not credit the testimony of Scott Rusmisel, an engineer for a neighboring community, who worked on a project with Osiris in 2002, and that the trial court failed to address the testimony offered by Rusmisel, wherein he stated that Osiris' bid for the 2003 contract with the Borough was a "lowball bid." Again, this argument attacks credibility determinations. That the trial court found Rusmisel's testimony concerning a project completed by Osiris in a neighboring borough not to be credible is within its purview. As noted above, the trial court was unpersuaded by Rusmisel's testimony because no evidence showed that there were any cost overruns, delays, or other monetary losses on the project and opined that there was simply a personality conflict between Anthony Moscatiello and Rusmisel. While it is true that the trial court did not specifically address the issue of Rusmisel's opinion concerning the lowball bid, it is not required to give every reason why it was unpersuaded by Rusmisel's testimony, merely a reason that is supported by the record.

■ Finally, the Borough argues that the trial court erred in failing to afford deference to the opinions of fellow common pleas Judges Cercone and Friedman, rendered in prior litigation between the same parties as in the case *sub judice*. In its brief, the Borough concedes that it is not arguing that there is any collateral estoppel or res judicata issue; rather, it asserts that the trial court should have given the other judges' opinions due deference. The trial judge's opinion in the case *sub judice,* does discuss the opinions of Judges Cercone and Friedman and states the reasons why he believed that he was not bound by them. He correctly observed that the decisions made by Judges Cercone and Friedman, while involving the same parties and the same declaration of non-responsibility, involved bids for *other projects.* Consequently, the trial court was not obliged to accept those decisions and appropriately rendered his opinion based on the evidence that was presented before him in the matter *sub judice.* Therefore, we determine that the trial court did not err and properly considered the decisions of Judges Cercone and Friedman when making its determination.

Accordingly, we affirm the order of the trial court.

### ORDER

**NOW,** April 14, 2004, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.